David **WALTON**, Plaintiff
and Appellant,

v.

Phyllis **WALTON**, Defendant
and Appellee.

No. 900215–CA.

Court of Appeals of Utah.

June 28, 1991.

D. Kendall Perkins (argued), Salt Lake City, for plaintiff and appellant.

Jeremy M. Hoffman (argued), Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for defendant and appellee.

Before BENCH, GARFF and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Plaintiff, David Walton, appeals from an order denying his petition to modify his divorce decree as to change of custody. We affirm.

1. Mr. Walton's petition also concerned several

## FACTS

David and Phyllis Walton were married November 17, 1979. On November 13, 1986, Mr. Walton filed a complaint for divorce, and on September 24, 1987, the Waltons stipulated to an uncontested divorce. Based upon that stipulation, the original divorce decree granted custody of the Waltons' three children to Mrs. Walton.

On September 6, 1989, Mr. Walton filed a petition to modify the divorce decree, seeking custody of the children on the basis of a substantial change in circumstances.[1] At a hearing on the petition, Mr. Walton offered the following in support of his petition: (1) At the time of divorce, he was living in a condominium. Subsequently, he has moved to a single family dwelling in St. George, Utah, with his new wife, baby, and stepchildren. Mrs. Walton was living in a single family dwelling at the time of divorce, and now lives in an apartment complex. (2) Mrs. Walton was unemployed at the time of divorce, and is now a full-time student, which allows her less time to be at home with the children. (3) The written custody evaluation of Linda Hunt, L.S.W., recommended that Mr. Walton be given custody and primary care of the children.

Following the hearing, the trial court held, in pertinent part, that Mr. Walton had not presented sufficient evidence to show a substantial change in circumstances with regard to the custody question, and therefore denied Mr. Walton's petition in that regard.

## ISSUES

Mr. Walton presents the following issues on appeal: (1) Was there sufficient evidence to support the trial court's finding of no substantial change in circumstances? (2) Did the trial court err in denying Mr. Walton's petition on the basis of that finding?

## SUFFICIENCY OF THE EVIDENCE

A challenge to the sufficiency of the evidence concerns the trial court's findings of fact. We will not disturb such

other issues which are not presently before us.

findings unless they are clearly erroneous. *Hagan v. Hagan*, 810 P.2d 478, 481 (Utah App.1991) (citing *Jense v. Jense*, 784 P.2d 1249, 1251 (Utah App.1989)); *see also* Utah R.Civ.P. 52(a). The party seeking to overturn the trial court's findings has the burden of marshaling the evidence in support of the findings and then demonstrating that, despite such evidence, the findings are so lacking in support as to be against the clear weight of the evidence and, therefore, clearly erroneous. *Hagan*, 810 P.2d at 481 (citations omitted); *Riche v. Riche*, 784 P.2d 465, 468 (Utah App.1989). "If the appellant fails to marshal the evidence, the appellate court assumes that the record supports the findings of the trial court and proceeds to a review of the accuracy of the lower court's conclusions of law and the application of that law in the case." *Saunders v. Sharp*, 806 P.2d 198, 199 (Utah 1991) (per curiam) (citations omitted). In the case at bar, Mr. Walton has neither marshaled the evidence in support of the trial court's findings nor demonstrated that such findings are clearly erroneous. Instead, he has cited only the evidence that supports the outcome he desires. Thus, we assume the correctness of the trial court's findings and proceed to review its conclusions of law.

## REFUSAL TO MODIFY

The trial court's decision as to modification of a divorce decree will not be disturbed absent an abuse of discretion. *Hagan v. Hagan*, 810 P.2d 478, 481 (Utah App.1991) (citing *Myers v. Myers*, 768 P.2d 979, 984 (Utah App.1989)). It is the burden of the party seeking modification of a divorce decree to demonstrate that there has been a substantial change in circumstances that justifies modification. *Id.* at 483 (citing *Haslam v. Haslam*, 657 P.2d 757, 758 (Utah 1982)).

Mr. Walton claims that the trial court abused its discretion in basing its refusal to modify the custody arrangement on the lack of a substantial change in circumstances. He argues that *Elmer v. Elmer*, 776 P.2d 599 (Utah 1989), requires the trial court to look at the best interests of the

children and base its ruling thereon. We disagree.

In *Hogge v. Hogge*, 649 P.2d 51, 53 (Utah 1982), the Utah Supreme Court developed a two-part procedure for obtaining a change of custody. The party seeking modification must first establish that there has been a substantial change in circumstances occurring subsequent to the divorce, and then show that the change of custody is in the best interests of the child. *See also Becker v. Becker*, 694 P.2d 608 (Utah 1984). This rule was later qualified in *Elmer* which held that "in change of custody cases involving a nonlitigated custody decree, a trial court, in applying the changed circumstances test, should receive evidence on changed circumstances and that evidence *may* include evidence which pertains to the best interests of the child." *Elmer*, 776 P.2d at 605 (emphasis added); *see also Maughan v. Maughan*, 770 P.2d 156, 160 (Utah App.1989); *Hardy v. Hardy*, 776 P.2d 917, 922–23 (Utah App.1989) (quoting *Elmer*, 776 P.2d at 605). The reasoning behind tempering the *Hogge–Becker* rule in nonlitigated custody decrees is plain: " 'Too rigid an application of the rule ... would lock a child into the custody of one parent or the other where there has been no determination on the merits of parenting ability of either parent and custody has been awarded only because of the default of one parent in failing to oppose the complaint of the other.' " *Elmer*, 776 P.2d at 603 (quoting *Kramer v. Kramer*, 738 P.2d 624, 629 (Utah 1987) (Howe, J., concurring)). Moreover, a trial court's decision to merge the best interests of the child into the changed circumstances test is particularly justified when "the initial custody award is premised on a temporary condition, a choice between marginal custody arrangements, a default decree, or similar exceptional criteria." *Maughan*, 770 P.2d at 160.

Mr. Walton's interpretation of *Elmer* is untenable in light of the plain language of *Elmer* cited above. In *Elmer*, the Utah Supreme Court did not replace the *Hogge–Becker* test with a new test requiring the trial court to look solely at

the best interests of the child. Rather, *Elmer* merely incorporated evidence concerning the best interests of the child into the changed circumstances test in nonlitigated custody cases. Such evidence was received by the trial court in the case at bar. At the hearing on Mr. Walton's petition to modify, Mr. Walton called Linda Hunt, L.S.W., to the stand, in order to elicit testimony concerning her report and her opinion as to what would be in the best interests of the children. Counsel for Mrs. Walton objected, arguing that a substantial change in circumstances had not been established. The trial court ruled:

> Well, there's been some evidence, and I will permit the testimony. I realize that the foundational issue, the change of circumstances, we can't even get her change of custody to show that. Even though, there may be evidence of the best interest and welfare of the children. As long as we understand what the conditions and requirements are for change of custody, I suppose we can go ahead.

Additionally, the trial court received into evidence Linda Hunt's custody evaluation report. In permitting Hunt's testimony and admitting her report, the trial court incorporated evidence concerning the best interests of the children into its determination that there had been no substantial change in circumstances. Consequently, we find no abuse of discretion.[2]

■ Also absent are exceptional criteria such as an initial custody award premised on a temporary condition, a choice between marginal custody arrangements, or a default decree. *Maughan,* 770 P.2d at 160. Nor is this a case in which the refusal to change custody will result in "the continua-

tion of custody in a parent who is indifferent to, or even destructive of, the child's welfare." *Elmer,* 776 P.2d at 604 (quoting *Kramer,* 738 P.2d at 629 (Howe, J., concurring)). Hunt's custody evaluation report noted that "[b]oth parents express considerable care and love for the boys. They are both invested and competent in providing parenting and nurturing." Additionally, at the hearing on Mr. Walton's petition to modify the original divorce decree, Hunt testified that: (1) she "could find no issues of an unfit parent," (2) Mrs. Walton "did a very good job in her parenting skills," (3) the children were doing well socially and academically, (4) the children had "bonded" with their mother, (5) Mrs. Walton was able to physically and mentally meet the needs of her children, and (6) her recommendation that Mr. Walton be given custody was "a close call." Leaving the children in Mrs. Walton's care, which fosters stability, does not leave them in the hands of someone who is indifferent to or destructive of their welfare.

Lastly, we reiterate that the high threshold established in *Hogge* was set forth "to 'protect the child from "ping-pong" custody awards' and the accompanying instability so damaging to a child's proper development." *Maughan,* 770 P.2d at 160 (quoting *Kramer,* 738 P.2d at 626). To permit a change of custody on the basis that Mr. Walton is now living in a single family dwelling in St. George, while Mrs. Walton is living in an apartment complex in Salt Lake City, and on the basis that Mrs. Walton is currently a full-time student, would open the door for Mrs. Walton to petition to re-modify the custody arrangements after she finishes her schooling and becomes able to support her children in a more

---

2. The *Elmer* rule is particularly applicable where custody has been awarded " 'because of the default of one parent in failing to oppose the complaint of the other.'" *Elmer,* 776 P.2d at 603 (quoting *Kramer,* 738 P.2d at 629 (Howe, J., concurring)). Here, however, custody was awarded based on the stipulation of the parties. In either event, custody was unlitigated. *Hardy,* 776 P.2d at 923. However, we must caution that *Elmer* merely permitted the taking of evidence concerning the best interests of the child in determining whether there has been a substantial change in circumstances: "[I]n change

of custody cases involving a nonlitigated custody decree, a trial court, in applying the changed circumstances test, should receive evidence on changed circumstances and that evidence *may* include evidence which pertains to the best interests of the child." *Elmer,* 776 P.2d at 605 (emphasis added). *Elmer* did not compel the taking of such evidence, nor do we. The modification of the *Hogge–Becker* two-tier approach in *Elmer* was meant to serve as a shield with which to protect the best interests of the child, not as a sword with which to wage on-going custody battles.

comfortable style, thus promoting, not inhibiting "ping-pong" custody. The trial court clearly did not abuse its discretion in refusing to do so.

## CONCLUSION

The trial court properly included evidence as to the children's best interest in holding that there had been no substantial change in circumstances which would justify modification of the custody portion of the original divorce decree. Accordingly, we affirm.

BENCH and GARFF, JJ., concur.