**Ahmad SOLTANIEH, Plaintiff and Appellant,**

v.

**Roxana Ingrid KING, Defendant and Appellee.**

No. 910002–CA.

Court of Appeals of Utah.

Feb. 19, 1992.

---

Joseph E. Hatch, Salt Lake City, and Stephen W. Jewell, Logan, for plaintiff and appellant.

L. Brent Hoggan, Logan, for defendant and appellee.

Before BILLINGS, Associate P.J., and JACKSON and RUSSON, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

This is an appeal from two orders of the district court. The first order grants summary judgment in favor of appellee, barring appellant's action to set aside a divorce decree. The second order modifies the divorce decree, regarding appellant's visitation rights with his daughter. We affirm both orders.

### FACTS

Appellant Ahmad Soltanieh and appellee Roxana Ingrid King were married on March 8, 1977, when they were students at Utah State University. Their only child, Leila, was born on March 27, 1982. Soltanieh is a citizen of Iran and King is a citizen of Bolivia. During their marriage, the parties were in the United States on student visas.

In 1983, Soltanieh completed his studies, receiving a masters degree in engineering, and could no longer remain in the country on a student visa. He returned to Iran expecting his wife and child to follow later, but they never did. In September, 1984, King sent Soltanieh divorce papers, asking Soltanieh to sign the papers and forge the notary public information. She told him the reason for the divorce was to allow her to get a green card. Soltanieh signed the papers, consisting of an Appearance, Waiver and Consent, and a Stipulation and Property Settlement Agreement.

King filed the documents and the divorce decree containing the provisions set forth in the stipulation and agreement was entered on January 7, 1985. The decree awarded King custody of Leila and $150.00 per month in child support. Soltanieh was awarded reasonable visitation rights. The decree also provided the marital property be awarded to the party currently possessing it. Soltanieh was advised that the divorce was finalized.

Soltanieh began trying to return to the United States near the end of 1984, but was not able to obtain a visitor's visa until April 1989. King remarried in July 1987. Soltanieh contacted King to request visitation with Leila. King allowed Soltanieh to visit Leila once a week for one and one-half to two hours. King refused to grant Soltanieh greater visitation and in March 1990, Soltanieh filed a motion for an order to show cause why King should not be held in contempt for refusing Soltanieh reasonable

visitation. Soltanieh also filed a complaint seeking to set aside the divorce decree claiming King had committed fraud on the court in obtaining the divorce.

King responded to the order to show cause with a counter-affidavit denying she violated the terms of the decree and requesting the court to award her unpaid child support. The trial court conducted hearings on May 24, 1990 and June 5, 1990 and at the conclusion indicated it would treat the order to show cause and response as petitions to modify the divorce decree as to reasonable visitation and support payments. Both parties filed memoranda in support of their positions. The trial court awarded King judgment for delinquent child support and modified the general reasonable visitation language of the decree to specific limited visitation. The order provides that Soltanieh may visit Leila, within the boundaries of Cache County after depositing his passport and visa with the Clerk of the Court, for one and one-half hours on weekends and for one hour on a weekday, every other week.

In response to Soltanieh's complaint to set aside the divorce decree, King filed a motion for summary judgment. After hearing the motion, the trial court found that Soltanieh learned of the divorce decree no later than September 1985, allowing four years and five months to pass before filing the action. The court granted King summary judgment, concluding that Soltanieh's claims were barred by the three-year statute of limitations in Utah Code Ann. §§ 78–12–26(2) and (3) (1987).

## ACTION TO SET ASIDE DIVORCE DECREE

In reviewing the summary judgment, we analyze the facts and inferences in the light most favorable to Soltanieh. We affirm if there is no genuine issue of material fact and King is entitled to judgment as a matter of law. *See W. & G. Co. v. Redevelopment Agency of Salt Lake City*, 802 P.2d 755, 761 (Utah App.1990). "We do not

... defer to the trial court's conclusions of law, but review them for correctness." *Id.*

 Soltanieh contends the trial court erred in ruling that his independent action to set aside the divorce decree was time barred. We need not reach this issue as we conclude that the court properly dismissed the action as there was no fraud on the court. Soltanieh contends King perpetrated a fraud on the court when she completed the notary information on the stipulation and the waiver. The purpose of notarizing these documents is to assure execution by the person purporting to be the signer.[1] *Leyda v. Norelli*, 387 Pa.Super 411, 564 A.2d 244, 246 (1989), *cert. denied*, 525 Pa. 627, 578 A.2d 414 (1990). Soltanieh admits he signed the papers, submitting to the jurisdiction of the court. Thus, he agreed in writing that the court could proceed with the divorce. Soltanieh also alleges fraud on the court regarding the property distribution provisions of the decree. He claims that he never agreed to them. However, Soltanieh signed the stipulation, which set forth the identical property distribution provisions contained in the divorce decree—that each of the parties shall be awarded the marital property in their possession.

## MODIFICATION OF VISITATION PROVISION

After the trial court heard all the evidence on the order to show cause motion, King moved to change the order to show cause into a petition to modify the decree. Soltanieh and the court agreed. The court then rendered its decision to modify the decree and to restrict Soltanieh's visitation based on the evidence it heard. In its conclusions of law, the trial court neglected to include a specific finding that a material change in circumstances had occurred, warranting modification. Soltanieh's only objection to the court's findings at that time was "the findings submitted by Plaintiff do not adequately reflect the finding of the Court." On appeal, Soltanieh argues the

1. The parties focused their arguments on the time limitation to be applied to the fraud action and, therefore, do not cite any authority requiring notarization of a stipulation or a waiver. In our independent review, we have not found such a requirement.

trial court erred in failing to specify that circumstances had changed and the evidence is insufficient to support a finding that restricted visitation is in the best interests of the child.

Before modifying a custody or visitation order, a trial court must find there has been a material change in the circumstances upon which the earlier order was based, and a change in custody is in the best interests of the child. *Becker v. Becker*, 694 P.2d 608, 611 (Utah 1984); *Hogge v. Hogge*, 649 P.2d 51, 54 (Utah 1982). Where an original custody determination involved a thorough examination into the best interests of the child, a court should rigidly apply the two-step change in circumstances test in *Hogge. Hardy v. Hardy*, 776 P.2d 917, 922 (Utah App.1989). However, when the custody award is premised on a default decree, the trial court has not made a thorough examination of the child's best interests. Therefore, the trial court may receive evidence as to the best interests of the child when determining whether to reopen the custody issue. *See Cummings v. Cummings*, 821 P.2d 472, 474 (Utah App.1991). However, when the trial court does not apply the two-step process, "it still must conduct a separate analysis and make separate findings as to substantial change in circumstances." *Id.*

Because of the unusual procedural posture of this case, we conclude the visitation order should not fail merely because the trial court neglected to articulate the conclusion that there was a substantial change in circumstances. The trial court's underlying factual findings support a finding of changed circumstances, as a matter of law.[2] *See Bake v. Bake*, 772 P.2d 461, 463 (Utah App.1989). The trial court's findings state that Soltanieh was in Iran in 1985, the time of the divorce, and remained there until 1989. During this time, he had no contact with Leila, even by phone or letter. After the divorce, Soltanieh made King believe he would take Leila to Iran and had translated Leila's birth certificate into Farsi and filed it in Iran, making it easy to take Leila to Iran. King has remarried, and Leila has bonded to King's new husband, looking upon him as her father. Leila has not bonded to Soltanieh and is apprehensive about being alone with him. Based on these findings, we conclude there was a material change in circumstances warranting an examination into the best interests of the child.[3]

Soltanieh contends there is insufficient evidence to support the trial court's determination that severely restricting visitation is in the best interests of the child.[4] The trial court restricted Soltanieh's visitation to one and one-half hours on weekends and one hour on a weekday, every other week. Soltanieh must deposit his passport and visa with the Clerk of the Court and get a court order to remove them. In addition, he is restricted from taking Leila outside the boundaries of Cache County. The trial court is given broad discretion concerning child custody awards, and we will not disturb its decision "absent a showing of an abuse of discretion or manifest injustice." *Maughan v. Maughan*, 770 P.2d 156, 159 (Utah App.1989).

The trial court found Soltanieh had no respect for United States laws, and did not

---

**2.** We hesitated in reaching the merits of this case as counsel has informed us that circumstances have changed again. Soltanieh has married an American woman and has been deported to Iran once again. He hopes to return within a year. Furthermore, in the visitation order, the trial court stated it would review the matter three months after Soltanieh becomes employed. Therefore, it appears that the trial court will be required to review the visitation order based on subsequent circumstances in any event.

**3.** In addition, Soltanieh did not object to changing the order to show cause into a petition to modify, nor did he object to the procedure or the failure of the court to specify a change in circumstances. Therefore, we hold in the alternative, Soltanieh has waived his objections.

**4.** King argues, alternatively, that the modification order was merely an interpretation of "reasonable visitation" found in the decree. We reject this argument because it is contrary to the parties' characterization of the proceedings and the trial court's understanding. Furthermore, the visitation order does not set out normal, reasonable visitation.

want Leila raised under United States standards of education, dress, social relations, political philosophy and religion. The court further found that Soltanieh viewed King and Leila as his property and believed he was justified in doing anything necessary to remove Leila from the United States. Because of Soltanieh's threats, beliefs and conduct, King was apprehensive that he would take Leila to Iran, where King would not be able to obtain Leila's return. Finally, the court found Soltanieh had no contact with Leila from 1983 to 1989, and Leila is apprehensive about being alone with him.

Soltanieh has failed to challenge these findings. A party seeking to overturn the trial court's findings must marshal the evidence in support of the findings and then demonstrate that, "despite such evidence, the findings are so lacking in support as to be against the clear weight of the evidence and, therefore, clearly erroneous." *Walton v. Walton*, 814 P.2d 619, 621 (Utah App.1991); *see Cornish Town v. Koller*, 758 P.2d 919, 922 (Utah 1988). Soltanieh has neither marshaled the evidence nor demonstrated that the findings are erroneous. Therefore, we cannot say that the findings are clearly erroneous or that a mistake has been made.

In conclusion, we hold: (1) summary judgment was proper on Soltanieh's independent action under Rule 60(b) because as a matter of law, there was no fraud on the court; and (2) there was a material change in circumstances justifying the visitation modification, and the trial court's findings were sufficient to show restricted visitation was in the best interests of the child.

JACKSON, J., concurs.

RUSSON, J., concurs in result.